DECISION AND JUDGMENT ENTRY
This state appeal comes before the court from the Huron County Court of Common Pleas. The facts giving rise to this appeal are as follows.
On October 1, 1999, appellee, Reginald J. Cansler, was indicted on two counts of cocaine trafficking, violations of R.C. 2925.03. On December 21, 1999, appellee filed a motion to suppress arguing that his Miranda rights were violated.
A suppression hearing commenced on February 14, 2000. Corporal Annette McLaughlin of the Huron County Sheriff's Office testified that in September 1999, she was contacted by a reliable, confidential informant. The informant told her that a man by the name of Reginald C. was coming to Huron from Mansfield, Ohio with the intent of selling narcotics. The informant stated that Reginald C., in a dark colored car with a female, would be traveling to the residence of Gail Dauch on Stranton Road in Huron County. Corporal McLaughlin testified that in the past she has received information regarding drug activity at the Dauch home. Corporal McLaughlin also testified that in March 1998, she was advised that an African American male named "Reggie" drives from Richland County, Ohio to the Dauch residence in Huron County for the purpose of selling narcotics.
Corporal Michael Martz of the Huron County Sheriff's Office testified he was on road patrol on September 18, 1999, when he was called to assist Captain Robert McLaughlin in a traffic stop. Appellee, Reginald Cansler, was driving the vehicle that was stopped. Corporal Martz testified that Captain McLaughlin ordered appellee out of the vehicle. Corporal Martz then escorted appellee to the rear of the vehicle while Captain McLaughlin talked with appellee's female passenger. Corporal Martz testified that while Captain McLaughlin was talking to the passenger, he told Corporal Martz to read appellee his Miranda rights. Corporal Martz testified that he read appellee his Miranda rights from a pre-printed standard card. Corporal Martz asked appellee if he understood his rights and appellee said "yes." Corporal Martz asked appellee if he had any questions or if he wished to speak and appellee said "no." Captain McLaughlin approached and started a conversation with appellee. Corporal Martz testified that he told Captain McLaughlin what appellee had said. Corporal Martz testified that in his opinion, Captain McLaughlin's conversation with appellee did not amount to questioning. Rather, Corporal Martz testified, Captain McLaughlin merely recounted the facts of the case as he then knew them.
Captain Robert McLaughlin testified that he had also received previous information regarding possible drug activity at the Dauch residence. On September 18, 1999, Captain McLaughlin conducted surveillance on the Dauch residence. At approximately 4:00 p.m., McLaughlin testified he saw a dark-colored vehicle arrive at the residence. An African American male, later identified as appellee, exited the vehicle and walked to the residence. Captain McLaughlin could not read the license plate on the vehicle so he asked Corporal Annette McLaughlin to drive past the car. She determined that the vehicle's license plate was from Richland County, Ohio. Captain McLaughlin testified that appellee was at the Dauch residence for approximately two hours. When appellee left the Dauch residence and headed west, Captain McLaughlin ordered that the vehicle be stopped. Appellee went to the rear of the vehicle with Corporal Martz while Captain McLaughlin talked with Shirley Gordon, a passenger in the front seat. McLaughlin testified that he first read Gordon her Miranda rights. McLaughlin testified that Gordon did not ask for an attorney and did not say she did not want to talk to McLaughlin. McLaughlin then asked Gordon if there was any cocaine in the vehicle and Gordon told him it was in her purse. McLaughlin testified that she gave him permission to search her purse where he found two small plastic bags containing cocaine. McLaughlin testified that after he found the cocaine, he instructed Corporal Martz to read appellee his Miranda rights. While talking with Gordon, McLaughlin could hear Martz reading appellee his rights.
McLaughlin then approached Martz and appellee. McLaughlin testified that at that point, appellee was not free to leave. Corporal Martz told McLaughlin that appellee had "invoked his rights." McLaughlin testified that he understood Martz's statement to mean that appellee "didn't have anything to say to us." McLaughlin testified that he "wanted to lay out the circumstances to [appellee]." McLaughlin told appellee that Gordon had told him there was cocaine in her purse. He then asked appellee if he was going to let Gordon face charges for the cocaine. McLaughlin testified that appellee then admitted that the cocaine was his. On cross-examination, defense counsel engaged McLaughlin in the following line of questioning regarding his contact with appellee:
 "Defense counsel: With an approximation of 19 years experience, is it your information that when you ask a person a question, are you eliciting a response?
 "Captain McLaughlin: Yes.
 "Defense Counsel: So, you wanted a response from [appellee] whether he was going to incriminate himself or not?
 "Captain McLaughlin: Yes.
 "Defense Counsel: It's your understanding that he did, indeed, incriminate himself by saying, yes, those are mine?
 "Captain McLaughlin: Yes.
 "Defense Counsel: This is all after you had indicated — Corporal Martz had indicated to you that he had answered no, he didn't want to — does not want to answer any questions after being given his Miranda Warnings?
 "Captain McLaughlin: Yes."
The trial court granted appellee's motion to suppress. Appellant, the state of Ohio, now appeals setting forth the following assignment of error:
 "I. IT WAS ERROR FOR THE TRIAL COURT TO DETERMINE THAT REGGIE CANSLER'S RIGHT TO REMAIN SILENT WAS VIOLATED AND THUS HIS STATEMENT SHOULD BE SUPPRESSED BECAUSE THE POLICE INFORMED HIM OF THE FACTS OF THE CASE AS THEY UNDERSTOOD THEM."
When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592. An appellate court must independently determine, without deferring to the trial court's conclusions, whether as a matter of law the facts meet the applicable standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488.
The reading of the Miranda rights as a procedural safeguard against self-incrimination arises whenever an individual is subjected to custodial interrogation by a law enforcement officer. Miranda v.Arizona (1966), 384 U.S. 436, 478. The concept of "custodial interrogation" has been equated to those instances in which "questioning [has been] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Thompson v. Keohane (1995), 516 U.S. 99, 107, quoting Miranda at 444. In Miranda, supra, Chief Justice Earl Warren wrote:
 "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Id. at 473-74.
The transcript in this case shows that Captain McLaughlin knew appellee had invoked his Miranda rights but he chose to interrogate him anyway. This was a violation of appellee's Fifth Amendment right not to incriminate himself. Accordingly, the trial court did not err in granting appellee's motion to suppress. The state's sole assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Common Pleas Court is affirmed. Costs assessed to appellant.
JUDGMENT AFFIRMED.